**Carl J. BARRICK and Brenda L. Barrick, Appellants**

v.

**HOLY SPIRIT HOSPITAL OF THE SISTERS OF CHRISTIAN CHARITY, Individually and Doing Business as Holy Spirit Hospital, Sodexho Management, Inc., Sodexho Operations, LLC, and Linda J. Lawrence, Appellees.**

Superior Court of Pennsylvania.

Argued April 5, 2011.

Filed Nov. 23, 2011.

---

Wayne F. Shade, Carlisle and Terry S. Hyman, Harrisburg, for appellants.

Stephanie L. Hersperger, Harrisburg, for Sodexho Management, Sodexho Operations and Lawrence, appellees.

BEFORE: STEVENS, P.J., BENDER, BOWES, PANELLA, DONOHUE, SHOGAN, MUNDY, OTT, FREEDBERG, JJ.

OPINION BY MUNDY, J.:

Appellants, Carl J. Barrick (Mr. Barrick) and Brenda L. Barrick, appeal from the order entered in the Court of Common Pleas of Cumberland County on October 16, 2009, granting the motion to enforce the subpoena issued for Mr. Barrick's medical records. The order directed Appalachian Orthopedic Center (Appalachian)[1] to produce any and all documents pertaining to Mr. Barrick, including the correspondence between Appellants' counsel and Dr. Thomas Green. Dr. Green, who was Mr. Barrick's treating physician,

---

1. Appalachian is not a party in this action. Mr. Barrick's treating physician, Dr. Thomas Green, was affiliated with Appalachian.

was also designated to testify as an expert witness at trial. After careful review, we reverse the order of the trial court and remand for proceedings consistent with this opinion.

The pertinent factual and procedural background of this case as gleaned from the certified record follows. On June 18, 2007, Appellants filed an action against Holy Spirit Hospital of the Sisters of Christian Charity and Appellees, Sodexho Management, Inc., Sodexho Operations, LLC, and Linda Lawrence (collectively Sodexho).[2] According to Appellants' complaint, Mr. Barrick suffered severe spinal injuries on March 29, 2006, when the chair on which he was sitting collapsed beneath him in the cafeteria of Holy Spirit Hospital. Complaint, 12/28/07, at ¶¶ 18–25; Certified Record (C.R.) at 29–62. Dr. Green, an orthopedic surgeon who is affiliated with Appalachian, treated Mr. Barrick for the injuries allegedly sustained from this accident.

On March 19, 2008, Sodexho served Appalachian with a subpoena pursuant to Pa. R.C.P. 4009.21, requesting a "[c]omplete copy of the entire medical chart/file regarding **CARL J. BARRICK, DOB 7/28/61[.]**" C.R. at 97, 100–107. After receiving timely notice, Appellants did not object to the subpoena prior to its service, nor did Appellants seek a protective order

once the subpoena had been served. *See* Pa.R.C.P. 4009.21(c), (d)(2). In response to the subpoena, on March 31, 2008, Appalachian provided Sodexho with the medical records of Mr. Barrick. *See* Motion to Enforce Subpoena, 6/29/09, at ¶ 5; C.R. at 131. Upon request, Appalachian furnished Sodexho with an updated set of medical records for Mr. Barrick on June 19, 2009.[3] In producing this update, however, Appalachian noted, "[e]nclosed are the medical records and related correspondence for Mr. Barrick. Certain records of this office that pertain to Mr. Barrick but were not created for treatment purposes are not being produced." *Id.* at Exhibit E; C.R. at 159. Thereafter, on June 29, 2009, alleging that Appalachian failed to comply with the subpoena request, Sodexho filed a motion to enforce the subpoena directed to Appalachian. Motion to Enforce Subpoena, 6/29/09; C.R. at 129–159.

Appalachian and Appellants filed separate responses to Sodexho's motion to enforce the subpoena. In its response filed on July 9, 2009, Appalachian explained that Dr. Green "was [Mr. Barrick]'s orthopedic treating physician for multiple years" and "has also been retained under [Pa.R.C.P.] 4003.5 as an expert witness for [Mr. Barrick.]"[4] Appalachian's Response to Motion to Enforce Subpoena, 7/9/09, at ¶ 4; C.R. at 161. Contrary to Sodexho's allegations, Appalachian maintained that it "has

---

**2.** Sodexho Management, Inc., manages and operates the cafeteria at Holy Spirit Hospital pursuant to the terms of a written management agreement. Complaint, 12/28/07, at ¶ 5, Exhibit A; Answer and New Matter, 1/31/08, at ¶ 5. Linda J. Lawrence is an employee of Sodexho Management, Inc., and works as the general manager of the nutritional services department at Holy Spirit Hospital. Answer and New Matter, 1/31/08, at ¶ 6; C.R. at 69–77.

**3.** In response to Sodexho's May 4, 2009 request for updated medical records, Appalachian requested an updated subpoena on May

28, 2009. Motion to Enforce Subpoena, 6/29/09, at ¶¶ 6–7, Exhibit C; C.R. at 131, 147. Sodexho served an updated subpoena on June 10, 2009. *Id.* at ¶ 8, Exhibit D; C.R. at 131, 149–157. Again, the record reflects that Appellants neither filed objections nor sought a protective order in response to this subpoena.

**4.** Specifically, on April 23, 2009, Dr. Green was retained as an expert witness to testify on behalf of Appellants at trial. *See* Appellants' Response to Motion to Enforce, 7/16/09, at ¶ 11; C.R. at 171–172.

fully and completed [sic] responded to the subpoena[.]" *Id.* Appalachian further averred that it was not required to provide certain materials concerning Dr. Green's role as an expert witness because the subpoena "does not cover nor can it cover materials protected under [Pa.R.C.P.] 4003.3 (trial preparation materials) and [Pa.R.C.P.] 4003.5." *Id.* at ¶ 4; C.R. at 160–161. Similarly, in their response filed on July 16, 2009, "[Appellants] aver[red] that [Sodexho]'s subpoena does not, and may not permissibly, embrace trial preparation materials under Pa.R.C.P. 4003.3 or trial preparation materials in connection with communications between counsel for [Appellants] and [Appellants'] expert witnesses in preparation for trial under Pa. R.C.P. 4003.5." Appellants' Response to Motion to Enforce, 7/16/09, at ¶ 11; C.R. at 172.

The trial court held a hearing on August 6, 2009, in order to resolve the issues raised by Sodexho's motion to enforce the subpoena. N.T., 8/6/09, at 1–14. At the conclusion of the hearing, the trial court deferred resolution of the motion until after it conducted an *in camera* review of the pertinent correspondence between Dr. Green and Appellants' counsel. *Id.* at 14. Then, on October 16, 2009, the trial court entered an order granting Sodexho's mo-

tion to enforce the subpoena directed to Appalachian. C.R. at 127.

Thereafter, under Pa.R.A.P. 313(a), Appellants filed a timely notice of appeal on October 28, 2009.[5] Appellants filed their concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on November 18, 2009. C.R. at 211–215. On December 15, 2009, the trial court issued its Pa.R.A.P. 1925(a) opinion in support of its October 16, 2009 order. C.R. at 231–236. Then, on September 16, 2010, this Court affirmed the trial court's order granting Sodexho's motion to enforce the subpoena. Subsequently, Appellants sought reargument *en banc,* which this Court granted on November 19, 2010.

Herein, Appellants raise a single issue for our review.

Is it error for the court below to order [Mr. Barrick's] treating physician, who will also be testifying as his expert witness, to disclose letters and emails between the physician and counsel for [Appellants] that addressed the strategy as to how to frame the physician's expert opinions where all of the treatment records of [Mr. Barrick] had been disclosed to [Sodexho]?

Appellants' Original Brief at 3.[6]

■ Before we consider the merits of this case, we must first address whether

---

**5.** We are permitted to review the trial court's October 16, 2009 discovery order pursuant to the collateral order doctrine. Pa.R.A.P. 313(a) (providing that "[a]n appeal may be taken as of right from a collateral order of [a] [...] lower court"). Specifically, we recognize that "discovery orders involving privileged material are [...] appealable as collateral to the principal action pursuant to Pa. R.A.P. 313" because "once purportedly privileged material is divulged, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot." *T.M. v. Elwyn, Inc.,* 950 A.2d 1050, 1056–1057 (Pa.Super.2008) (citations and internal quotation marks omitted); *see Berkeyheiser v.*

*A–Plus Investigations, Inc.,* 936 A.2d 1117, 1123–1124 (Pa.Super.2007) (stating that "Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action").

**6.** In their Substituted Brief on *En Banc* Reargument, Appellants failed to include a statement of the questions involved as required by Pa.R.A.P. 2116(a). *See also* Pa.R.A.P. 2111(a)(4). Appellants clearly articulated the question presented in their original brief, however. We recognize that "[w]hen deficiencies in a brief hinder our ability to conduct meaningful appellate review, we **may**

Appellants waived their ability to challenge the trial court's October 16, 2009 order granting Sodexho's motion to enforce. As the record indicates, at least 20 days before serving Appalachian with a subpoena on both March 18, 2008 and June 10, 2009, Sodexho provided Appellants with written notice of its intent pursuant to Pa.R.C.P. 4009.21(a). C.R. at 97, 152. According to Sodexho, after receiving the prescribed notice, Appellants waived their right to object to either subpoena because (1) they "indicated in writing that they waived any objections to the proposed subpoena" and (2) they "failed to timely file any subsequent objections or a motion for a protective order as required by Pa.R.C.P. No. 4009.21." Sodexho's Brief on *En Banc* Reargument at 8–10.

Appellants respond to Sodexho's argument, explaining that they could not have realized Sodexho intended privileged communications to be within the scope of the subpoenas. Appellants' Substituted Brief on *En Banc* Reargument at 7, n. 1. Because both subpoenas specifically requested production of Mr. Barrick's medical record, Appellants claim they were unaware that the scope of either subpoena went beyond the medical record of Mr. Barrick's treatment. *Id.* Appellants assert that "they immediately filed an objection" after Sodexho filed its motion to enforce on June 29, 2009, as the motion alerted them for the first time to the true breadth of Sodexho's subpoena requests. *Id.* Thus, relying on *McGovern v. Hospital Service Assoc.*, 785 A.2d 1012 (Pa.Super.2001), Appellants argue that they did not waive their ability

to object to Sodexho's subpoena request for privileged communications merely because their objection was made outside the time period prescribed by Pa.R.C.P. 4009.21(d).

In the case *sub judice*, the nature and context of Sodexho's discovery request is illuminating. We deem it significant that, pursuant to Pa.R.C.P. 4009.21, Sodexho directly subpoenaed Mr. Barrick's medical record from Appalachian, the organization employing Mr. Barrick's treating physician. *See also* Pa.R.C.P. 4009.1. Sodexho specifically limited its request to the "[c]omplete copy of the entire medical chart/file regarding **CARL J. BARRICK, DOB 7/28/61[.]**" C.R. at 97, 100–107. By only requesting that Mr. Barrick's treating physician produce his patient's complete medical record pursuant to Pa.R.C.P. 4009.21, Sodexho offered Appellant no indication that it sought any document pertaining to Dr. Green's role as an expert witness. While Pa.R.C.P. 4009.21 allows parties to subpoena medical records from a non-party treating physician, this rule does not apply to discovery pertaining to an expert witness. Rather, Pa.R.C.P. 4003.5 **exclusively** controls discovery regarding expert testimony. Thus, Sodexho appropriately served two subpoenas upon Appalachian pursuant to Pa.R.C.P. 4009.21, only insofar as the subpoenas sought to obtain Mr. Barrick's medical chart from Dr. Green, the treating physician herein. Consequently, Appellants initially observed no justifiable basis for objecting to either subpoena.

dismiss the appeal entirely or find certain issues to be waived." *Irwin Union Nat. Bank and Trust Co. v. Famous*, 4 A.3d 1099, 1103 (Pa.Super.2010) (emphasis supplied), *citing* Pa.R.A.P. 2101. Although the Pennsylvania Rules of Appellate Procedure provide that we **may** quash or dismiss an appeal **if** the deficiencies found within the brief or reproduced

record are substantial, errors that are less than substantial may require a less severe remedy. *See* Pa.R.A.P., Rule 2101 (emphasis supplied). Upon consideration, we determine that the deficiencies found in Appellants' substituted brief do not substantially hinder our ability to conduct meaningful appellate review.

We discern no reason why Appellants should have anticipated that Sodexho improperly sought to discover from Appalachian the correspondence between Appellants' counsel and Dr. Green, using a subpoena pursuant to Pa.R.C.P. 4009.21: Because the correspondence concerns only Dr. Green's preparation for his role as an expert witness, any discovery request pertaining to the said correspondence falls squarely within the purview of Pa.R.C.P. 4003.5. From our review of the record, we determine that Appellants were unable to ascertain the intended reach of Sodexho's discovery request based solely upon an examination of the subpoenas alone. Accordingly, Appellants acted with the reasonable understanding that the subpoena, served pursuant to Pa.R.C.P. 4009.21, only sought documents in regard to Dr. Green's role as Mr. Barrick's treating physician.

Sodexho only made its intentions apparent when it filed a motion to enforce, seeking to compel Appalachian to produce the correspondence between Appellants' counsel and Dr. Green in regard to his role as an expert witness. C.R. at 129–159. Filed on June 29, 2009, Sodexho's motion was received well beyond the time constraints for raising objections to discovery requests prescribed by Pa.R.C.P. 4009.21(d). Nonetheless, once Appellants learned that the request sought potentially undiscoverable information, they promptly and appropriately objected in their answer to Sodexho's motion on July 16, 2009. C.R. at 170–178. In their response, Appellants specified both Pa.R.C.P. 4003.3 and Pa.R.C.P. 4003.5 as the bases of their objection. *Id.*

Despite these events, Sodexho contends that we must hold Appellants responsible for not filing a timely objection under Pa.R.C.P. 4009.21. We disagree and conclude that Appellants had no legitimate basis to file an objection to the subpoena within the period specified under Pa.R.C.P. 4009.21(d), as the subpoena appeared to seek only Mr. Barrick's treatment records. Hence, we refuse to determine that Appellants failed to preserve their objection to Sodexho's subpoena. Significantly, Sodexho's subpoena, as clarified, went beyond the scope of Pa.R.C.P. 4003.5 by requesting written materials pertaining to Dr. Green's role as an expert witness without first showing cause under section (a)(2) of the rule. As a result, we determine that Sodexho failed to substantially comply with the Pennsylvania Rules of Civil Procedure.[7] Sodexho's complete disregard of

7. In *Womer v. Hilliker*, 589 Pa. 256, 908 A.2d 269 (2006), our Supreme Court held that "a wholesale failure to take any of the actions that one of our rules [of civil procedure] requires" is not a mere "procedural misstep" and, thus, does not satisfy the doctrine of substantial compliance. *Id.* at 278 (stating that, under substantial compliance, a mere procedural misstep may be overlooked only if the defect does not prejudice the rights of any party); *see* Pa.R.C.P. 126. Specifically, the Court stated that a party does not substantially comply with the rules of civil procedure if "[he] disregards the terms of a rule in their entirety and determines for himself the steps he can take to satisfy the procedure that we have adopted to enhance the functioning of the trial courts." *Womer, supra* at 278. Rather, for substantial compliance, a party must make a substantial attempt to conform to requirements of the rules. *Id.*

Herein, Sodexho made no effort to comply with Pa.R.C.P. 4003.5; thus, Sodexho neither complied nor substantially complied with the rule. *Womer, supra* at 278 (noting that the equitable doctrine "is one of *substantial* compliance, not of *no* compliance"). Our discussion regarding the merits of Appellants' argument delves deeper into the scope and requirements of Pa.R.C.P. 4003.5. Nonetheless, at this juncture, it is important to note our Supreme Court has determined that a party must show cause to request further discovery from a non-party expert witness, other than the interrogatories described at Pa.R.C.P. 4003.5(a)(1). *Cooper v. Schoffstall*, 588 Pa. 505, 905 A.2d 482, 492 (2006).

the plain language of Pa.R.C.P. 4003.5 left Appellants unaware that the subpoena, in fact, sought written materials concerning Dr. Green's expert testimony. As such, Sodexho's failure to adhere to the requirements of Pa.R.C.P. 4003.5 directly induced Appellants not to file an objection to Sodexho's discovery request within the time period specified by Pa.R.C.P. 4009.21(d). Consequently, in light of Sodexho's total disregard for the provisions set forth in Pa.R.C.P. 4003.5 and, thus, its failure to substantially comply with the Rules of Civil Procedure, we conclude that Appellants have not waived their right to object.[8] We shall now proceed to consider the merits of this appeal.

In the lone issue presented, we must address whether the Pennsylvania Rules of Civil Procedure allow discovery of the written correspondence between counsel and an expert witness retained by counsel. Herein, as noted above, the trial court issued an order on October 16, 2009, granting Sodexho's motion to enforce the subpoena against Appalachian. The order instructed Appalachian to produce, *inter alia*, the correspondence between Appellants' counsel and Dr. Green in his capacity as an expert witness. The trial court's opinion issued pursuant to Pa.R.A.P. 1925(a) reveals that it found Sodexho's subpoena fell within the scope of Pa.C.R.P. 4003.5. Trial Court Opinion, 12/15/09, at 3–6. The trial court explained that it was "satisfied [ . . . ] that where an expert is being called to advance a plaintiff's case in chief and the nature of the expert's testimony may have been materially impacted by correspondence with counsel, such correspondence is discoverable." *Id.* at 5–6.

Appellants argue that the trial court erred in ordering full discovery of all written communications between their counsel and their expert witness, Dr. Green. Appellants' Substituted Brief on *En Banc* Reargument at 6–7, 17–18. Specifically, Appellants contend that the disclosure of private communications between an attorney and an expert witness "is *not* within the ambit of [Pa.R.C.P.] 4003.5 and instead is contrary to its express language." *Id.* at 7 (emphasis in original). Appellants aver that Pa.R.C.P. 4003.5 entitles the opposition only to discover (1) the name of the expert witness and "(2) the substance of the facts and a summary of the grounds for each opinion to be offered at trial." *Id.* at 8. Appellants assert that Pa.R.C.P. 4003.5(a)(2) requires a showing of "good cause" to obtain any further discovery from an expert witness, including any private communications. *Id.* 8–9. Although they concede that the correspondence requested in this case may be relevant to the expert's testimony, Appellants maintain that such private communications are un-

---

**8.** As noted above, in maintaining that they have not waived their right to object, Appellants rely upon *McGovern, supra.* In that case, we confronted the question of whether the failure to file objections to a discovery request within the period of time prescribed by the Pennsylvania Rules of Civil Procedure results in the waiver of all objections therein. *Id.* at 1016. We noted that "we are extremely reluctant to affirm any order that compels full discovery when the information being sought may be privileged." *Id.* at 1019. Consequently, we ultimately determined that the right to object to a discovery request for allegedly privileged information is not waived be-

cause the objection was filed beyond the required period of time. *Id.* Thus, *McGovern, supra*, reveals that an untimely objection to a discovery request "does *not automatically* waive the right to object[,]" particularly if the objection alleges that the discovery request targets privileged information. *Id.* (emphasis in original). Accordingly, we agree with Appellants. In addition to our reasoning set forth above, *McGovern, supra*, serves as an independent basis for concluding that Appellants have not waived their objection as it relates to the discovery of privileged information. *Id.* at 1018–1019.

discoverable within the plain language of the rule. *Id.* at 10.

Appellants also point to adverse policy considerations that would result if discovery under Pa.R.C.P. 4003.5 were held to include the draft reports and private communications of expert witnesses.[9] *Id.* at 11, 13–15. Appellants allege that this expanded view of the scope of Pa.R.C.P. 4003.5 will cause, for example, an increased cost of litigation and, consequently, a competitive advantage for wealthier litigants. *Id.* at 13–14. Appellants claim, *inter alia,* that experts and attorneys will take elaborate measures to avoid creating a discoverable record. *Id.* at 13. According to Appellants, these measures include hiring two sets of experts and directing experts to avoid taking notes and recording preliminary analyses and opinions. *Id.*

■■ "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *Lockley v. CSX Transp. Inc.,* 5 A.3d 383, 388 (Pa.Super.2010), *quoting Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1125 (Pa.Super.2007). Nevertheless, we recognize that "the interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law." *Boatin v. Miller,* 955 A.2d 424, 427 (Pa.Super.2008) (citation omitted). In reviewing the trial court's October 16, 2009 order, we must address whether the trial court properly interpreted and applied the Pennsylvania Rules of Civil Procedure. Accordingly, to the extent that we are required to interpret a rule of civil procedure, "our standard of review is *de novo,* and our scope of review is plenary." *Id.*

■■ In addition, our interpretation of the Pennsylvania Rules of Civil Procedure is guided by the principles contained in Pa.R.C.P. 127, which provides as follows.

### Rule 127. Construction of Rules. Intent of Supreme Court Controls

(a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

9. Notably, Appellants cite the Federal Rules of Civil Procedure, which in 1993 adopted an expansive approach regarding the discovery of materials obtained from an expert witness. Appellants' Substituted Brief on *En Banc* Reargument at 11–17; *See* F.R.Civ.P. 26(a)(2)(B). Effective December 2010, the United States Supreme Court amended the Federal Rules to restrict the scope of such discovery, no longer allowing the discovery of private communications and draft reports from expert witnesses. This change stems from the recommendations of both the Committee on Rules of Practice and Procedure as well as the Advisory Committee, each publishing a report that articulates the adverse consequences observed after years of permitting more expansive discovery of materials obtained from expert witnesses.

Pa.R.C.P. 127; *see Bednar v. Dana Corp.*, 962 A.2d 1232, 1236 (Pa.Super.2008). Furthermore, "a note to a rule or an explanatory comment is not a part of the rule, but may be used in construing the rule." *Boatin, supra* at 427, *citing* Pa.R.C.P. 129(e).

As we begin our review of the trial court's order, we note that Pa.R.C.P. 4003.1 sets forth the general rule regarding the scope of discovery. Pursuant to Pa.R.C.P. 4003.1(a), "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" Although it is not required to be admissible at trial, the information sought must appear "reasonably calculated to lead to the discovery of admissible evidence." Pa. R.C.P. 4003.1(b).

The general parameters for the scope of discovery contained in Rule 4003.1, however, are "[s]ubject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011[.]" Pa.R.C.P. 4003.1(a). Providing the rules for discovery as it relates to expert testimony, Pa.R.C.P. 4003.5 states the following in pertinent part.

**Rule 4003.5. Discovery of Expert Testimony. Trial Preparation Material**

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa.R.C.P. 4003.5(a)(1)-(2). Our Supreme Court has interpreted how Pa.R.C.P. 4003.5 interacts with the general scope of discovery, announcing that "[Pa.R.C.P.] 4003.5 should be read to restrict the scope of **all** discovery from non-party witnesses retained as experts in trial preparation." *Cooper v. Schoffstall*, 588 Pa. 505, 905 A.2d 482, 492 (2006) (emphasis added). Thus, according to our Supreme Court, any request for discovery not covered under Pa. R.C.P. 4003.5(a)(1) **shall** be channeled "through the Rule's 'cause shown' criterion." *Id., citing* Pa.R.C.P. 4003.5(a)(2).

Under Pa.R.C.P. 4003.5(a)(1), the rule allows a party to submit interrogatories **to any other party,** requiring the opposition to identify each of their expert witnesses as well as "to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa.R.C.P. 4003.5(a)(1). We emphasize that these interrogatories must be served upon the party retaining the expert as a witness, not directly upon the expert. *Id.* Significantly, as Pa.R.C.P. 4003.5 specifies, a party cannot directly

serve any discovery request upon a non-party expert witness. We also underscore that Pa.R.C.P. 4003.5(a)(1) narrowly defines the substantive inquiries that a party may require an opposing expert to answer in an interrogatory. As this section of the rule specifies, a party may **only** require opposing experts to state the facts and opinions to which they are expected to testify and to summarize the grounds for each such opinion. *Id.* Any other interrogatory, aside from these two specific inquiries, exceeds the scope of the plain language contained within Pa.R.C.P. 4003.5(a)(1). Consequently, as indicated by our Supreme Court's construction of Pa.R.C.P. 4003.5, to obtain "further discovery" regarding the testimony of an expert witness by means other than this narrowly defined set of interrogatories, a party must show cause and acquire a court order for the additional discovery. Pa.R.C.P. 4003.5(a)(2) (providing "[u]pon cause shown, the court may order further discovery by other means"); *See Cooper, supra* at 492.

■ After careful review of the record and the applicable Pennsylvania Rules of Civil Procedure, including the case law interpreting those rules, we conclude that the trial court erred by issuing the October 16, 2009 order. The information requested by Sodexho's subpoena exceeds the scope of Pa.R.C.P. 4003.5(a)(1) for two separate and distinct reasons. First, as its motion to enforce clearly denotes, Sodexho intended to use its subpoena to obtain written documents **directly** from an opposing party's expert witness. Specifically, the record indicates that Sodexho's subpoena was sent **directly** to Appalachian and sought the written correspondence be-

tween Appellants' counsel and their expert witness, Dr. Green. The provisions set forth in Pa.R.C.P. 4003.5(a)(1) do not allow this form of discovery. Rather, as mentioned above, section (a)(1) of the rule only entitles a party to serve a very narrowly defined set of interrogatories upon an opposing party. Although Pa.R.C.P. 4003.5(a)(1) expressly notes that a party may answer the interrogatories by filing a report devised and signed by the expert, this section of the rule does not authorize any party to discover any written document **directly** from an expert witness.

■ Second, Sodexho's subpoena overreached in terms of substance because it sought information beyond the permissive scope of Pa.R.C.P. 4003.5(a)(1). As we stressed previously, interrogatories under Pa.R.C.P. 4003.5(a)(1) may **only** require an opposing party's expert witness to "state the substance of the facts and opinions to which the expert is expected to testify and [to] summar[ize] [ ] the grounds for each opinion." Any discovery request for information beyond the boundaries of this clear, explicit, and succinct statement is impermissible under Pa.R.C.P. 4003.5(a)(1). Thus, a discovery request for the content of any correspondence between an opposing party's attorney and the expert witness retained by that party falls outside the express language of Pa.R.C.P. 4003.5(a)(1). Such correspondence is not responsive to an interrogatory seeking the expert witness to "state the substance of the facts and opinions to which the expert is expected to testify[,]" nor is it responsive to an interrogatory seeking the expert witness to summarize "the grounds for each [of his or her] opinion[s]."[10] *Id.* Accordingly, we conclude that, by seeking the written cor-

---

**10.** Correspondence between a party's attorney and expert may be a valid response to the narrowly defined interrogatories under Pa. R.C.P. 4003.5(a)(1) if, for example, the expert specifically cited such correspondence as one basis for his or her expert opinion. Such is not the case here.

respondence between Appellants' counsel and Dr. Green in his capacity as an expert witness, Sodexho's subpoena requested information that was outside the permissible confines of Pa.R.C.P. 4003.5(a)(1).

■ Furthermore, because Pa.R.C.P. 4003.5 defines the scope of all discovery concerning expert testimony, our Supreme Court has made clear that any discovery request not covered by Pa.R.C.P. 4003.5(a)(1) shall be channeled "through the Rule's 'cause shown' criterion." *Cooper, supra* at 492, *citing* Pa.R.C.P. 4003.5(a)(2). In seeking to obtain written communications from an expert witness, Sodexho's subpoena was a request for "further discovery by other means" within the purview of Pa.R.C.P. 4003.5(a)(2). Thus, we determine that Pa.R.C.P. 4003.5(a)(2) required Sodexho to show cause and acquire a court order **before** requesting from Appalachian the sought correspondence in regard to Dr. Green's role as an expert witness. Without first showing cause, any direct discovery request for documents from an expert witness is beyond the scope of Pa.R.C.P. 4003.5. Consequently, because Sodexho never made any showing of cause, we conclude that Sodexho's discovery request is clearly beyond the scope of Pa.R.C.P. 4003.5 and, therefore, the sought correspondence is not discoverable under the Pennsylvania Rules of Civil Procedure.[11] *See* Pa.R.C.P. 4003.5(a)(2).

■ In addition, Appellants argue that the trial court's discovery order contravenes Pa.R.C.P. 4003.3, noting that the correspondence between their counsel and Dr. Green is not discoverable because it falls within the parameters of the work-product doctrine. Appellants' Substituted Brief on *En Banc* Reargument at 10–11. According to Appellants, forcing the disclosure of any communications between counsel and an expert witness "violates the work product privilege contained in [Pa. R.C.P.] 4003.3." *Id.* We agree.

■ The Pennsylvania Rules of Civil Procedure set forth the attorney work-product doctrine, which provides as follows.

### Rule 4003.3. Scope of Discovery. Trial Preparation Material Generally

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. **The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.** With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

---

11. The trial court's October 16, 2009 order granting Sodexho's motion to enforce does not satisfy the requirement under Pa.R.C.P. 4003.5(a)(2), which specify that a party must acquire a court order before obtaining further discovery other than interrogatories pursuant to Pa.R.C.P. 4003.5(a)(1). First, in attempting to obtain through subpoena the written communications herein, Sodexho has never shown cause nor recognized its need to show cause. Second, Sodexho was required to show cause **before** serving the subpoena upon Appalachian, requesting written communications in regard to expert testimony. Pa. R.C.P. 4003.5(a)(2).

Pa.R.C.P. 4003.3 (emphasis added). According to the explanatory comment accompanying Pa.R.C.P. 4003.3, "[t]he Rule is carefully drawn and means exactly what it says." *Id.*, Explanatory Comment at ¶ 3. "The underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1062 (Pa.Super.2008), *quoting Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super.2003) (citations and quotation marks omitted). Thus, Pa.R.C.P. 4003.3 specifically "immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, **nothing more.**" *Id.*, Explanatory Comment at ¶ 3 (emphasis added).

■ This Court, however, has recognized that "the work-product privilege is not absolute and items may be deemed discoverable if the 'product' sought becomes a relevant issue in the action." *T.M., supra* at 1062, *quoting Gocial, supra* at 1222. Importantly, the explanatory comment reveals that this limited exception to the work-product doctrine only pertains to situations when an attorney's work product itself becomes relevant.

There are, however, situations under the Rule where the legal opinion of an attorney becomes a relevant issue in an action; for example, an action for malicious prosecution or abuse of process where the defense is based on a good faith reliance on a legal opinion of counsel. The opinion becomes a relevant piece of evidence for the defendant, upon which defendant will rely. The opinion, even though it may have been sought in anticipation of possible future litigation, is not protected against discovery. A defendant may not base his defense upon an opinion of counsel and at the same time claim that it is immune from pre-trial disclosure to the plaintiff.

As to representatives of a party, and sometimes an attorney, there may be situations where his conclusions or opinion as to the value or merit of a claim, not discoverable in the original litigation, should be discoverable in subsequent litigation. For example, suit is brought against an insurance carrier for unreasonable refusal to settle, resulting in a judgment against the insured in an amount in excess of the insurance coverage. Here discovery and inspection should be permitted in camera where required to weed out protected material.

Pa.R.C.P. 4003.3, Explanatory Comment at ¶ 4–5. Thus, as the comment makes clear, documents ordinarily protected by the attorney work-product doctrine may be discoverable if the work product itself is relevant to the underlying action. *Id.* The work-product privilege contained within Pa.R.C.P. 4003.3 cannot be overcome, however, by merely asserting that the protected documents reference relevant subject matter. *Id.* Rather, to overcome the work-product privilege, either an attorney's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research or legal theories must be directly relevant to the action. *Id.*

In the instant case, any mental impressions or legal analyses posited by Appellants' counsel and contained within the sought correspondence constitute attorney work product. Pa.R.C.P. 4003.3. We acknowledge that an *in camera* review may be necessary in order to determine precisely what aspects of the correspondence fall within the parameters of the attorney work-product doctrine. Nevertheless, to

the extent that the correspondence between Appellants' counsel and Dr. Green constitutes attorney work product pursuant to Pa.R.C.P. 4003.3, we conclude that it is not discoverable under the Pennsylvania Rules of Civil Procedure. *Id.* (stating "[t]he discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories").

We further conclude that, even if Sodexho had attempted to show cause pursuant to Pa.R.C.P. 4003.5(a)(2), it would not have been entitled to discover the correspondence in this case. Insofar as the information sought is protected by the work-product doctrine, showing cause under Pa.R.C.P. 4003.5(a)(2) requires demonstrating why the privilege must yield to the need for discovery. *See Cooper, supra* at 494–495 (reasoning that the proponents of discovery bear the burden of demonstrating why they are entitled to additional discovery under Pa.R.C.P. 4003.5(a)(2) in regard to expert testimony). Although the work-product doctrine is not absolute, we noted above that the privilege **only** surrenders to the need for discovery when the attorney's work product itself becomes relevant to the action. Pa.R.C.P. 4003.3, Explanatory Comment at ¶ 4–5. Here, unlike the examples in the explanatory comment accompanying Pa.R.C.P. 4003.3, the correspondence is only relevant because of the subject matter discussed between Appellants' counsel and Dr. Green. The correspondence itself is not relevant to this action. In stark contrast to the examples in the explanatory comment, Appellants' action relies upon the opinions and analyses of the expert witness, not those of their attorneys. *Id.* (providing examples illustrating that attorney work product "is not protected against discovery" where a party's claim or defense relies upon the opinion of its attorney). Therefore, even if

Sodexho had complied with Pa.R.C.P. 4003.5(a)(2), the correspondence between Appellants' counsel and Dr. Green was not discoverable. Accordingly, we conclude that Pa.R.C.P. 4003.3 serves as a separate and independent basis for our decision.

In closing, based upon our interpretation of the Pennsylvania Rules of Civil Procedure, drawing upon the plain language of the rules and the case law of this jurisdiction, we conclude that the trial court committed an error of law in granting Sodexho's motion to enforce. As our Supreme Court has previously determined, other than the interrogatories described in Pa.R.C.P. 4003.5(a)(1), the Rules of Civil Procedure require that a party show cause to obtain further discovery from an expert witness. *Cooper, supra* at 492. Sodexho in this case failed to make any such showing. Thus, we hold that Sodexho's subpoena seeking documents from Appellants' expert witness was beyond the scope of Pa.R.C.P. 4003.5, without first showing cause as to why such a discovery request was needed. Furthermore, the written communication between counsel and an expert witness retained by counsel is not discoverable under the Pennsylvania Rules of Civil Procedure to the extent that such communication is protected by the work-product doctrine, unless the proponent of the discovery request shows pursuant to Pa.R.C.P. 4003.5(a)(2) specifically why the communication itself is relevant. As such, we also hold that Pa.R.C.P. 4003.3 immunizes from discovery any work product contained within the correspondence between Appellants' counsel and Dr. Green.

Therefore, for all the reasons discussed in our above analysis, we hold that the correspondence at issue in this case is not discoverable under the Pennsylvania Rules of Civil Procedure pursuant to both Pa.R.C.P. 4003.3 and Pa.R.C.P. 4003.5.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge BOWES files a concurring and dissenting opinion.

CONCURRING AND DISSENTING OPINION BY BOWES, J.:

The majority holds that Pennsylvania Rules of Civil Procedure 4003.3 and 4003.5 each independently renders letters and emails between counsel and his expert witness non-discoverable. I agree that Pa. R.C.P. 4003.5, which defines the permissible methods and scope of expert witness discovery, precludes the use of a subpoena directed to the expert to obtain documents in the expert's file. Thus, I concur in that portion of the majority opinion. However, I disagree with the majority that Pa. R.C.P. 4003.3 affords blanket work-product protection to all communications *vis-a-vis* the attorney and his expert. From that part of the majority writing, I respectfully dissent.

Preliminarily, I am perplexed that the majority berates Sodexho for using a subpoena to obtain discovery from an expert "in complete disregard of the plain language of Pa.R.C.P. 4003.5," Majority Opinion at 807, but is willing to overlook Appellants' non-compliance with the procedures set forth in Pa.R.C.P. 4009.21(c) for objecting to a subpoena. The majority fails to appreciate that when Sodexho first served a subpoena upon Appalachian on March 19, 2008, Dr. Green was simply Appellant's treating physician. The use of a subpoena is a sanctioned method for seeking discovery from a non-party, including a treating physician. *See* Pa.R.C.P. 4009.21.

On June 8, 2009, Sodexho sought updated records and correspondence via subpoena and, again, Appellants did not object.[12] Sodexho still believed that it was dealing with a treating physician and using an acceptable discovery method to do so. Unbeknownst to Sodexho, however, Appellants had retained Dr. Green as an expert witness on April 23, 2009. Appellants did not object to the use of a subpoena seeking the expert's correspondence and other documents on the ground that Dr. Green was a testifying expert witness and that the use of a subpoena exceeded the scope of permissible discovery of experts under Rule 4003.5. Instead, Appellants asked Appalachian not to disclose letters and emails between counsel and Dr. Green that addressed how the physician should frame his expert testimony, and Appalachian complied. Appellant's original brief at 7.

Sodexho learned for the first time that Dr. Green was Appellants' trial expert on July 16, 2009, when Appellants opposed Sodexho's motion to enforce the subpoena and asserted that any correspondence between counsel and Dr. Green was privileged. At that point, the trial court had already scheduled argument on the motion to compel and the parties had agreed to an *in camera* review to determine if the correspondence was work-product privileged. Had Appellants timely objected and articulated Rule 4003.5 as the basis for their objection, the trial court could have ruled on this issue without an *in camera* examination.

As the majority correctly points out, a party is not permitted to obtain written documents directly from an opposing expert; discovery of an expert is limited to

---

**12.** While the majority characterizes the subpoena as seeking only a "[c]omplete copy of the entire medical chart/file regarding **CARL J. BARRICK, DOB** [...]," the subpoena clearly stated, "including but not limited to: office notes, doctor's records/reports/correspondence/notes/memoranda, ..." Subpoena, 6/2/09, at 1.

interrogatories directed to opposing counsel seeking a summary of the "substance of the facts and opinions to which the expert is expected to testify[,]" and the "grounds for each [of his or her] opinion[s]," or the expert's report. Pa.R.C.P. 4003.5(a)(1)(b). That rule provides in full:

**Rule 4003.5. Discovery of Expert Testimony. Trial Preparation Material**

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa.R.C.P. 4003.5(a)(1)-(2). *See Cooper v. Schoffstall*, 588 Pa. 505, 905 A.2d 482 (2006) (holding that Rule 4003.5 restricts the scope of all discovery from non-party witnesses retained as experts in trial preparation). Interrogatories calculated to obtain the substance of the expert's facts and opinions are the proper method of expert discovery. I agree that the use of a subpoena to obtain the expert's correspondence runs contrary to the specific language of the above rule.[13] Although the rule permits additional discovery "upon cause shown," no such argument was advanced in this case to justify any alternate forms of discovery. Bearing in mind that Rule 4003.5 is a discovery rule and extends its protection only until trial, I am in agreement with the majority's application of this rule to these facts.

However, I must part company with the majority regarding the balance of its holding. The majority, instead of relying solely upon Rule 4003.5 as the basis for its decision, also opines that the correspondence at issue constitutes work product and is protected pursuant to Rule 4003.3. Majority Opinion at 811. That rule states:

**Rule 4003.3. Scope of Discovery. Trial Preparation Material Generally**

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his

---

**13.** Upon cause shown, a party may be permitted to engage in supplemental discovery related to potential bias or favoritism of a non-party expert witness retained for trial where there is a reasonable basis "to believe that the witness may have entered the professional witness category." *Cooper v. Schoffstall*, 588 Pa. 505, 905 A.2d 482, 494–495 (2006).

or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics. Pa.R.C.P. 4003.3.

The majority initially reiterates what I believe to be the long-standing view that where documents such as the correspondence herein allegedly contain, *inter alia,* the attorney's mental impressions and strategies, "*in camera* review may be necessary in order to determine precisely what aspects of the correspondence fall within the parameters of the attorney work-product doctrine." Majority Opinion at 812. *See T.M. v. Elwyn, Inc.,* 950 A.2d 1050 (Pa.Super.2008) (remand required for trial court to issue ruling whether each document was privileged and if necessary, *in camera* examination); *In re Estate of Wood,* 818 A.2d 568, 573 (Pa.Super.2003) (Superior Court instructs trial judge to review material *in camera* to determine if work-product doctrine applies). This approach implicitly recognizes that such correspondence is not attorney work product *per se.* In its discussion, the majority properly qualifies its statements, such as, "to the extent that the correspondence between Appellants' counsel and Dr. Green constitutes attorney work-product ..., we conclude that it is not discoverable ...," Majority Opinion at 813, and "Insofar as the information sought is protected by the work-product doctrine...." *Id.*

I cannot reconcile these statements by the majority, however, with its simultaneous wholehearted approval of Appellants' contention that "forcing disclosure of

**any** communications between counsel and an expert witness 'violates the work-product privilege contained in [Pa.R.C.P.] 4003.3.'" Majority Opinion at 811 (quoting Appellants' substituted brief on *en banc* reargument at 10–11) (emphasis added). The majority's premise is refuted by Rule 4003.3's general proviso that "a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative[.]" Presumably, that would include correspondence. Only the disclosure of mental impressions of the attorney "or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories[,]" is precluded. *See* Pa.R.C.P. 4003.3. Conspicuously absent is any blanket prohibition against the disclosure of an attorney's correspondence generally, or communication with an expert specifically. Such correspondence, to the extent it contains the mental impressions and conclusions of the attorney, may be determined to be protected work product following an *in camera* examination. However, Rule 4003.3 clearly does not insulate all attorney communications from discovery.

Using the attorney work-product doctrine to protect the expert's correspondence to the attorney is even more problematic. In reaching its result, the majority implicitly concludes that the expert is a party representative so that his correspondence presumptively falls within the penumbra of Rule 4003.3. However, that rule limits representatives to a party's "attorney, consultant, surety, indemnitor, insurer or agent." No mention is made of an expert witness as a representative of the party.[14] The majority does not bridge this

---

14. Under the doctrine of *expressio unius est exclusio alterius,* the inclusion of a specific matter in a statute implies the exclusion of other matters. *See Atcovitz v. Gulph Mills*

logical gap and offers no insight as to how or why it arrived at the conclusion that the expert's correspondence is entitled to Rule 4003.3 protection.[15]

A review of the documents at issue in this case certainly reveals some attorney work product. However, the documents also contain facts that were provided by counsel to the expert and correspondence from the expert to the attorney, neither of which constitutes attorney work product. I believe that by conferring work-product protection upon **all** correspondence between the attorney and his expert, the majority has impermissibly expanded Rule 4003.3, with far-reaching implications. It potentially infringes upon a party's right to obtain additional expert discovery upon cause shown pursuant to Rule 4003.5(a)(2). The ramifications also extend to trial. Presently, an expert's file becomes available for an opponent's inspection and use at trial. If all communications between the expert and the attorney constitute work product, they will be protected through the course of the trial.

Our job in construing a rule of civil procedure is to "ascertain and effectuate the intention of the Supreme Court." Pa. R.C.P. 127(a); *Kurian v. Anisman*, 851 A.2d 152 (Pa.Super.2004). When the rule is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.C.P. 127(b). Absent explicit guidance, we consider several factors in ascertaining the intent of our Supreme Court, among them the necessity for the rule, its history, and the

mischief to be remedied. *See* Pa.R.C.P. 127(c).

I recognize the salutary purpose of the work-product doctrine, which is "to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1222 (Pa.Super.2003) (citations and quotation marks omitted); *see also T.M. v. Elwyn, Inc., supra* at 1062–63. However, while the goal is "to keep the files of counsel free from examination by the opponent," it does so only insofar as the lawyer's files do not include "written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the 'work product' of the lawyer." *See* Civil Procedural Rules Committee Explanatory Comment to Rule 4003.3 (1978). Rule 4003.3 "immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more[,]" *id.,* to enable attorneys to prepare their cases "without fear that their work product will be used against their clients." *Commonwealth v. Noll,* 443 Pa.Super. 602, 662 A.2d 1123, 1126 (1995).

Although the purpose of the work-product doctrine is to provide an attorney with intellectual room to ruminate about his strategy and thoughts on his client's case, we must be mindful of the equally important goal of advancing the truth-seeking process during the course of litigation. Prior to the adoption of our current discov-

---

*Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1223 (2002). Pursuant to this doctrine, the absence of any reference to an expert witness as a party representative would imply that the expert was excluded from that category and, hence, from the protection of the work-product doctrine.

**15.** Sodexho also contended that in disclosing attorney work-product protected information to his expert, a non-representative, Appellants waived any work-product privilege. Appellants cite no Pennsylvania authority to this effect, and I am unaware of any.

ery rules in 1978, all information obtained by a party in anticipation of litigation or trial was protected from discovery under what was then Rule 4011(d). Civil Procedural Rules Committee Explanatory Comment to Rule 4003.3 (1978). Rule 4003.3 abolished most of that work-product/trial preparation protection in favor of broader discovery. "The purpose of the discovery rules is to prevent surprise and unfairness and to allow a fair trial on the merits." *Dominick v. Hanson*, 753 A.2d 824, 826 (Pa.Super.2000) (citations omitted). The work-product doctrine is an exception to the general discovery rules, *Gocial, supra,* and the privilege embodied therein is not an absolute one. *Id.; see also The Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144, 1165 (Pa.Super.1999) *overruled on other grounds Mishoe v. Erie Ins. Co.,* 573 Pa. 267, 824 A.2d 1153 (2003) (work product discoverable in situations where the legal opinion of an attorney becomes a relevant issue in an action).[16]

In holding that Rule 4003.3 work product provides blanket protection of all correspondence between the attorney and his expert on the facts herein, including all properly discoverable material included therein, the majority fails to serve both the letter and the spirit of that rule. Such an interpretation would seem to undermine our High Court's intent to carefully circumscribe the protection afforded an attorney's trial preparation in favor of broader discovery. Moreover, by treating an expert witness as a party representative for purposes of Rule 4003.3 work-product, the majority abandons any pretense of expert objectivity and independence.[17]

For the foregoing reasons, I agree that Rule 4003.5 precludes the discovery of correspondence and emails between attorney and expert via use of a subpoena in this case. I find no basis for holding sacrosanct all correspondence between expert and attorney as work-product protected under Rule 4003.3 and, from that portion of the majority holding, I respectfully dissent.

16. Whether work-product protection should yield to discovery pursuant to Pa.R.C.P. 4003.5(a)(2), where the attorney's work product serves as the basis of an expert's opinion, is an issue which has not yet been addressed by our appellate courts.

17. Appellants point out, and I am mindful, that the Pennsylvania Supreme Court's Civil Procedural Rules Committee has proposed a change to Pa.R.C.P. 4003.5, which would make all communications between a party's attorney and testifying expert non-discoverable, regardless of the form of the communications. Such an amendment could be perceived as largely redundant if Rule 4003.3 already provides such protection from discovery as the majority now holds.