Andrea HALE, individually and on behalf of all others similarly situated, Plaintiff,

v.

CITIBANK, N.A., Defendant.

No. 00 Civ. 2387(JSR).

United States District Court, S.D. New York.

Jan. 31, 2001.

Stuart Blander, Alan Heller, Heller, Horowitz & Feit, P.C., New York City, for plaintiff.

Mark Hanchet, Zeichner Ellman & Krause LLP, New York City, for defendant.

## *MEMORANDUM ORDER*

RAKOFF, Judge.

Plaintiff Andrea Hale alleges that she is entitled to damages because the advertisements and promotional materials in response to which she opened a Citibank AutoSave account in 1999 failed to comply with the requirements of the Truth in Savings Act ("TISA"), 12 U.S.C. § 4301 *et seq.*, and regulations thereunder. Further to her Complaint, she moves for (1) certification of a class consisting of all AutoSave account holders, and (2) summary judgment in her favor with respect to liability. For the following reasons, class certification is denied, but summary judgment as to liability is granted.

A Citibank AutoSave account is an account in which a specified amount is automatically transferred each month from the customer's checking account to his or her linked savings account. Beginning March 10, 1999, Citibank advertised that any customer who opened such an account before May 31, 1999 in a manner that resulted in at least two such transfers of at least $50 each per month before August 31, 1999 would receive a $25 bonus. The advertisements appeared in publications such as *The New York Times* and on signs and brochures at various Citibank offices. In no case, however, did the advertisements set forth the Annual Percentage Yield ("APY") of the AutoSave accounts, although required to do so by 12 C.F.R. § 230.8(d), a regulation promulgated by the Federal Re-

serve Board pursuant to TISA. After seeing the advertisement in *The New York Times* and in a Citibank brochure, Hale opened a qualifying AutoSave account on April 15, 1999, making a $1,500 deposit. Shortly thereafter she received the $25 bonus. On March 29, 2000, she commenced this suit, and on November 8, 2000 the instant motions were fully submitted to the Court.

■ Class certification must be denied because, among other reasons, plaintiff cannot fairly and adequately represent the interests of the putative class. *See* Fed.R.Civ.P. 23(a)(4). Most prominently this is because there is a potential conflict of interest between her duties to the prospective class and her husband's contingent financial interest in the fees, if any, obtained by the law firm proposed to represent the class, Heller, Horowitz & Feit, P.C. ("the Heller firm"), not just in this suit but in other actions. Specifically, Hale's husband, Harley Schnall, is an attorney who has referred at least seven other cases to the Heller firm, all of which appear to be cases against financial institutions brought under TISA or the Truth in Lending Act. *See* Schnall Dep. at 37–41; List of Heller, Horowitz & Feit Class Action Cases, Ex. D to Hanchet Decl. The plaintiffs in these cases included Schnall himself, his wife Hale, his mother and his father. *See* Schnall Dep. at 37–41. Schnall and the Heller firm have an "expectation" that "when these cases are resolved and if they're settled substantially in favor of the plaintiff[s], that within the bounds of what's legally and ethically acceptable, [Schnall] might be recognized for [his] contribution to the cases." *Id.* at 59–60. Schnall's "contribution" to these cases allegedly consists of directing the attorneys at the Heller firm to the relevant statute and regulations and reviewing pleadings and briefs prepared by the Heller firm. *See id.* at 48–51.

Whether these problematic arrangements violate New York State law or ethics is not before this Court. Whether lawful or not, however, they will inevitably cause Hale to confuse her fiduciary duty to the prospective class with her interest in protecting and advancing her husband's contingent financial relationship with the Heller firm, which in turn is related to a host of extraneous considerations, including the conduct of other cases.

Given the numerous respects in which such interests could conflict, Hale cannot be relied on to fairly and adequately represent the proposed class. *See, e.g., Jaroslawicz v. Safety Kleen Corp.,* 151 F.R.D. 324, 329–30 (N.D.Ill.1993).

■ Hale's personal cause of action remains, however, and it is one on which she is entitled to summary judgment in her favor as to liability. TISA provides that a person injured by a violation of the statute or of the regulations promulgated thereunder may sue for actual or statutory damages. *See* 12 U.S.C. § 4310(a). One such regulation, 12 C.F.R. § 230.8(d), provides in pertinent part that "if a bonus is stated in an advertisement, the advertisement shall state the following information, to the extent applicable, clearly and conspicuously: (1) The 'annual percentage yield,' using that term." Citibank concedes that the advertisement that was current at the time Hale opened her AutoSave account, and which offered customers a $25 bonus for opening the account, did not contain the account's APY.

Citibank argues, however, that Hale has failed to show "reliance" in the sense of showing that the presence of the missing APY information would have materially affected her decision to open the account. But neither the regulation nor TISA itself requires such a showing as a condition of liability, and such exacting notions of reliance, drawn from the common law, are inapplicable, so far as liability is concerned, to a regulatory statute like TISA whose stated purpose is "to *require* the clear and uniform disclosure of … the rates of interest which are payable on deposit accounts by depository institutions." 12 U.S.C. § 4301(b) (emphasis added); *see also* S. Rep. 102–167, at 80–82 (1991). Here, it is undisputed that Hale opened her AutoSave account after seeing Citibank's advertisements that promised her a bonus for so doing. In such circumstances, the failure of the advertisements to disclose the APY was sufficient in itself to trigger liability. *Cf. White v. Arlen Realty & Dev. Corp.,* 540 F.2d 645, 649 (4th Cir.1975).

■ This is not to say that narrower notions of reliance might not be relevant to determining actual damages. But at oral

argument on November 1, 2000, Hale abandoned any claim for actual damages for herself, *see* transcript, and now seeks only statutory damages, which a TISA plaintiff can obtain even when she cannot prove actual damages. *See Shelley v. AmSouth Bank,* 2000 WL 1121778, at *14 (S.D.Ala. July 24, 2000); *cf. Ratner v. Chemical Bank New York Trust Co.,* 329 F.Supp. 270, 280–81 (S.D.N.Y.1971) (reaching this conclusion with respect to the analogous provision of the Truth in Lending Act); *see also Gambardella v. G. Fox & Co.,* 716 F.2d 104, 108 n. 4 (2d Cir.1983).

Specifically, the statute provides that in addition to actual damages, if any, a prevailing complainant can obtain "such additional amount as the court may allow ... except ... not ... less than $100 nor greater than $1,000," as well as the costs of the action and a reasonable attorney's fee as also determined by the court, *see* § 4310(a)(3). The very presence of such provisions confirms Congress' intent that TISA be more than simply remedial and that plaintiffs serve as "private attorney generals" to enforce its provisions.

Of course, the absence of actual damages may still be relevant in determining what statutory damages to award. Similarly, the fact that Citibank did include the APY in its monthly account statements to Hale, while not sufficient to avoid liability altogether,[1] might well serve to diminish Hale's damages. Finally, Citibank's allegation that Hale is a "professional plaintiff" who acted from "ulterior motives" in opening her AutoSave account might, if proven, warrant the Court in diminishing the amount of statutory damages to which she might otherwise be entitled. But these and other factors bearing on statutory damages remain to be determined.

For now, plaintiff's motion for class certification is hereby denied and plaintiff's motion for partial summary judgment as to liability is hereby granted. In accordance with the prior schedule agreed to by the parties, further submissions on the amount of statutory damages to be awarded must be submitted by February 21, 2001, after which the Court will determine the amount of such damages and enter final judgment.

SO ORDERED.

---

1. TISA does set forth a particularized procedure by which depository institutions may in some circumstances "cure" failures to disclose and thereby avoid liability altogether, *see* 12 U.S.C. § 4310(g); but Citibank does not claim that it complied with this procedure in this case.