Benjamin GOCIAL, M.D., Jacqueline N. Gutman, M.D. and Dean E. Burget, Jr., M.D., on behalf of themselves individually and all others similarly situated, Appellants,

v.

**INDEPENDENCE BLUE CROSS and Keystone Health Plan East, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 5, 2003.

Filed June 24, 2003.

David H. Weinstein, Philadelphia, for appellants.

David L. Comerford, Philadelphia, for appellees.

Before: ORIE MELVIN, BOWES and BECK, JJ.

OPINION BY BECK, J.

¶ 1 In this appeal from a discovery order in the context of class action certification, we examine the nature of the documents that are discoverable from the plaintiffs where defendants claim a conflict of interest exists pursuant to Pa.R.Civ.P. 1709.

¶ 2 The trial court required plaintiffs-appellants to turn over certain documents to appellees. We reverse and remand with instructions.

### Facts and Procedural History

¶ 3 The trial court opinion sets out the basis upon which the Complaint in this case was filed:

> This case involves a proposed class action by plaintiffs, Benjamin Gocial, M.D. ("Dr. Gocial"), Jacqueline N. Gutman, M.D. (Dr. Gutman) and Dean E. Burget Jr., M.D. ("Dr. Burget"), [the plaintiffs] named health care providers, against defendants, Independence Blue Cross ("IBC") and Keystone Health Plan East, Inc. ("Keystone") [the defendants] asserting that defendants engaged in the practice of arbitrarily and unilaterally denying reimbursement for or reducing payment of medical expense claims for surgical services, products and procedures in violation of provider agreements with defendants. Defendants' alleged misconduct purportedly included

the use of computerized cost containment programs which resulted in the denial of payment for medical services rendered to patients and submitted for reimbursement.

Trial Court Opinion, 6/20/02, at 1–2.

¶ 4 The plaintiffs filed their initial Complaint in December of 2000, followed by a First Amended Complaint and a Second Amended Complaint. The defendants filed an Answer in November of 2001 and the plaintiffs thereafter filed a Motion for Class Certification. During the discovery process the defendants filed a series of notices of subpoena. One of the notices was directed to the law firm Wade, Goldstein, Landau & Abruzzo, P.C. (Wade Goldstein).[1] The subpoena sought: 1) all documents related to this case; 2) all documents, including fee agreements and referral agreements, related to this case and any other action against IBC between Wade Goldstein and other named firms and attorneys; and 3) all agreements or contracts related to this case between Wade Goldstein and the plaintiffs.[2]

¶ 5 The plaintiffs objected to the subpoenas and asserted protection from disclosure based on attorney-client privilege and attorney work-product privilege.[3] The defendants responded by filing a motion to

---

1. Other notices sought information from other sources; this appeal concerns only the subpoena directed to Wade Goldstein.

2. The subpoena named other doctors in addition to the plaintiffs.

3. This case presents a unique set of circumstances. The plaintiffs maintain that Wade Goldstein does not represent them in this matter, yet it was the plaintiffs who challenged the subpoenas and asserted attorney-client privilege. Further, counsel for the plaintiffs repeatedly made representations on Wade Goldstein's behalf and handled the arguments at the discovery hearings. The gravamen of the issue here is whether and to

what extent Wade Goldstein is acting as counsel to the putative class. While we recognize that the plaintiffs continue to present themselves as separate from Wade Goldstein, we note that the record appears, at least in part, to establish otherwise.

The trial court referred to the parties claiming privilege as Wade Goldstein and the plaintiffs interchangeably. The plaintiffs' briefs further blur the distinction between the two. For purposes of continuity, if not clarity, we have referred to the party asserting privilege as the plaintiffs and we have considered this case in the same light as the court and the parties.

strike the objections and the trial court held hearings on the issue. The parties' filings and the hearings revealed the following. Bruce Goldstein (Attorney Goldstein), named partner at Wade Goldstein, is married to Dr. Gutman, one of the three doctors presented as putative class representatives in the plaintiffs' initial Motion for Class Certification. Although Attorney Goldstein has never entered his appearance in this case, he represented the plaintiffs at some point in the case and entered into contingent fee agreements with a named plaintiff, Dr. Burget, and another doctor.[4] These two contingent fee agreements were attached to a privilege log, prepared by Wade Goldstein, that was created at the trial court's request when the plaintiffs objected to the subpoena. The log sets out a series of documents in Wade Goldstein's possession relating to the discovery request.

¶ 6 The defendants believe they are entitled to all documents from Wade Goldstein because the documents establish Attorney Goldstein's involvement in this case or other cases against IBC. According to the defendants, Attorney Goldstein's involvement in the case, when combined with his marital relationship with Dr. Gutman, represents a conflict of interest that precludes the court from certifying the class.

¶ 7 The plaintiffs assert that Wade Goldstein is required to turn over only those documents that reveal a fee agreement or referral agreement between the firm and the named plaintiffs. According to the plaintiffs, they have always been willing to turn over these limited documents and in fact have done so by attaching the two contingent fee agreements to the privilege log. The plaintiffs claim that all of the other documents listed on the privilege log are not relevant to the conflict of interest issue raised by the defendants and, further, are protected by privilege.

¶ 8 On June 20, 2002, three days after the final hearing on this issue, the trial court entered an order commanding the plaintiffs to "produce all documents referenced on the log submitted by Wade, Goldstein ... within 10 days." On June 27, 2002, the plaintiffs filed an Amended Motion for Class Certification in which they requested that only Dr. Burget, not Drs. Gocial or Gutman, be named as class representative. On July 1, 2002, the plaintiffs filed a Notice of Appeal from the June 20th order. The plaintiffs also filed an Affidavit executed by Attorney Goldstein, who asserted that neither he nor his firm had any financial interest in this case or any right to a fee or other form of compensation in connection with this case.

■ ¶ 9 In their Statement of Matters Complained of on Appeal, the plaintiffs assert that the trial court erred in ordering production of all documents referenced on the privilege log because the documents are protected by attorney-client and attorney work-product privilege, as well as privileges relating to joint interests of litigants.[5] The plaintiffs also faulted the trial court for finding that Attorney Goldstein is counsel of record for the plaintiffs. Finally, the plaintiffs asserted that the court erred in ordering production of the documents because the request for the documents was made for purposes of harassment, interference with attorney-client relationships, escalating and churning fees, and conducting improper discovery of claims not at issue.

4. The other doctor was Stephen L. Corson, M.D., who later withdrew from the case completely. The fee agreements included other firms in addition to Wade Goldstein.

5. The plaintiffs fail to analyze "privileges relating to joint interests of litigants" in their brief and so have waived this issue on appeal.

*Appealability*

 ¶ 10 We begin our assessment of this matter by determining whether the trial court's order, which clearly is not a final order that ends the litigation, is nonetheless appealable. The plaintiffs assert that the order is appealable under the collateral order doctrine. That doctrine, now codified, permits an appeal as of right from a non-final order if it is separable from and collateral to the main action, involves a right too important to be denied review and, if review is postponed, the right will be irreparably lost. Pa.R.A.P. 313.

¶ 11 Based on relevant case law on the issue of attorney-client privilege and Rule 313, we conclude that the order of production in this case satisfies the Rule. *See Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999); *Dibble v. Penn State Geisinger Clinic*, 806 A.2d 866 (Pa.Super.2002); *McGovern v. Hospital Service Assn. Of Northeastern Pennsylvania*, 785 A.2d 1012 (Pa.Super.2001). In all of these cases, our courts held that the appellant's colorable claim of attorney-client and attorney work-product privilege made appellate review proper. In light of those cases, we proceed to consider the merits of this case.

*Conflict of Interest*

¶ 12 The Pennsylvania Rules of Civil Procedure set out the criteria for class certification. In making a determination of whether the representative parties will "fairly and adequately assert and protect the interests of the class" a court must inquire:

1) whether the attorney for the representative parties will adequately represent the interests of the class,

2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

Pa.R.Civ.P. 1709.

 ¶ 13 The defendants' request for documents from Wade Goldstein was based on their allegation that Dr. Gutman, as a class representative, had a conflict of interest because her husband represented the class. The defendants sought the documents at issue to establish the conflict and block class certification, which was pending in the trial court. Relying on a number of federal cases that have recognized the impropriety of such a relationship in the context of a class action, the trial court concluded that in the event Wade Goldstein represented the class, the defendants were entitled to discover that fact and oppose certification on that basis.

¶ 14 The primary case relied on by the trial court is *Hale v. Citibank, N.A.*, 198 F.R.D. 606 (S.D.N.Y.2001). *Hale* involved the request for class certification in a case brought under the Truth in Lending Act. The evidence revealed that Andrea Hale, named as representative party for the class, was married to the attorney who referred the matter to the law firm representing the class. Because Hale's husband expected some financial recognition for his "contribution" to the case, the district court held that the arrangement would "inevitably cause Hale to confuse her fiduciary duty to the prospective class with her interest in protecting and advancing her husband's contingent financial relationship" with the law firm. *Id.* at 607. Thus, the *Hale* court denied certification.

¶ 15 Other federal cases have denied certification on similar grounds. *See e.g., Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324 (N.D.Ill.1993) (class representative's close working relationship with law

firm representing class creates conflict of interest; class certification denied); *Pope v. City of Clearwater*, 138 F.R.D. 141 (M.D.Fla.1991) (denying certification based on relationship between the named representative and the proposed class attorneys); *Zlotnick v. TIE Communications, Inc.*, 123 F.R.D. 189 (E.D.Pa.1988) (class certification inappropriate where class representative's son served as plaintiffs' counsel).

¶ 16 Although there is little Pennsylvania case law addressing the issue of a class representative's potential conflict of interest, the law that does exist cautions against conflicts of this type and relies on federal jurisprudence. In *Murphy v. Harleysville Mutual Insurance Co.*, 282 Pa.Super. 244, 422 A.2d 1097 (1980), *cert. denied*, 454 U.S. 896, 102 S.Ct. 395, 70 L.Ed.2d 211 (1981), this court affirmed the denial of class certification because the class representative also served as counsel to the class. The *Murphy* court noted that the comment to Rule 1709 explained conflict of interest by referring to a federal case. *See Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir.) (conflict present where counsel for the class was the named plaintiff's law partner), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). The *Murphy* court relied on federal case law to decide that denial of certification was appropriate due to the named plaintiff's conflict of interest.

¶ 17 Among their reasons for disregarding *Hale* and other cases, the plaintiffs claim that the federal case law is not binding on the state court and, in any event, the cases relied on focused on whether the class should be certified, not whether discovery should be granted. We accept neither rationale.

¶ 18 In light of this court's prior reliance on federal case law, as well as Rule 1709's reference to federal law, we find that the trial court acted reasonably in looking to federal jurisprudence and deciding that the issue of conflict in this case was a genuine one. *See Murphy, supra. See also Janicik v. Prudential Insurance Company*, 305 Pa.Super. 120, 451 A.2d 451, 454 n. 3 (1982) ("federal precedent is instructive in construing Pennsylvania's class action rules").

¶ 19 Further, the fact that the cases relied on addressed the question of whether class certification should be granted does not mean that those cases are not relevant to the issue of discovery. The defendants in this case are claiming a conflict of interest on the part of a named plaintiff/class representative. The Rules plainly state that the court must inquire into the representative's conflict of interest prior to certifying the class. Pa.R.Civ.P. 1709. It is eminently reasonable for the defendants to raise a claim of conflict while the motion for class certification is pending in the court. Although it is clear that a conflict of interest must be demonstrated by the party asserting it, we rely "upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik, supra*, at 459. Thus, the defendants' request for documents to expose a conflict is a reasonable one and the trial court's efforts to determine the validity of the claim is likewise prudent.

### Privilege

¶ 20 The question that remains is whether the trial court's resolution of the issue was correct. "The attorney-client privilege has been a part of Pennsylvania law since the founding of the Pennsylvania colony, and has been codified in our statutory law." *Commonwealth v. Noll*, 443 Pa.Super. 602, 662 A.2d 1123, 1126 (1995), *appeal denied*, 543 Pa. 726, 673 A.2d 333 (1996). The relevant provision directs:

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

 ¶ 21 The attorney-client privilege exists to "foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406, 423 (1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services. *Slater v. Rimar, Inc.,* 462 Pa. 138, 148, 338 A.2d 584, 589 (1975); *Commonwealth v. duPont,* 730 A.2d 970, 977 (Pa.Super.1999), *appeal denied,* 561 Pa. 669, 749 A.2d 466 (2000).

¶ 22 The attorney work-product doctrine is set out in the Rules of Civil Procedure and appears as an exception to general discovery rules. It provides:

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.Civ.P. 4003.3.

 ¶ 23 The underlying purpose of the work-product doctrine is to shield "the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Lepley v. Lycoming County Court of Common Pleas,* 481 Pa. 565, 393 A.2d 306, 310 (1978). The doctrine "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Noll,* 662 A.2d at 1126. However, the work-product privilege is not absolute and items may be deemed discoverable if the "product" sought becomes a relevant issue in the action. *Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144, 1165 (Pa.Super.1999).

¶ 24 Despite the definitions and purposes of the privileges set out in statute and case law, there is little analysis of privilege in the record here, either by the parties or the court. It appears that the focus of analysis below was whether a conflict existed, not whether the documents requested were protected by privilege.

¶ 25 The record reflects that the plaintiffs agreed to disclosure of several of the documents in Wade Goldstein's privilege log. It also appears from the record that there were a number of documents in the log that the defendants were not interested in obtaining. However, the status of other documents remained in dispute.

¶ 26 Throughout the several hearings on this issue, the court at times addressed only fee agreements and referral agreements. At other times the court con-

cerned itself only with documents relating to this case, as opposed to the broader category of documents requested by the defendants, *i.e.,* those that related to other cases against IBC. Further, although the court states in its opinion that it "limited production of any fee agreement, referral agreement or other document to this case and not to other actions against IBC," Trial Court Opinion, 9/4/02, at 4, the court's order is sweeping and commands production of "all documents referenced on the log submitted by Wade Goldstein." Trial Court Order dated 6/20/02.

¶ 27 While we agree with the trial court that the defendants are entitled to discovery to establish a conflict under Rule 1709, we cannot determine on the record before us whether and to what extent any of the privileges raised by the plaintiffs may apply here. Despite the existence of the privilege log, the trial court did not rule on the relevance of each item or explain why the privileges raised were inapplicable. Rather, the court simply deemed the entire log discoverable. We believe this was error.

¶ 28 In light of the record, we conclude that a remand is necessary so that the trial court may issue a ruling with respect to each document actually sought by the defendants. In some instances, *in camera* review may be required.

### Miscellaneous Claims

¶ 29 With respect to the remaining issues raised by the plaintiffs, that the trial court erred in ruling Wade Goldstein was an attorney of record and that the defendants' request should have been denied because it was made only to harass the plaintiffs, we find them moot in light of our analysis set out above. A claim of conflict of interest is a serious one that the Rules require the court to consider. The very issue the parties are attempting to resolve is whether Wade Goldstein is acting, or

was acting, as counsel for the class in some capacity. The trial court properly recognized this issue as legitimate.

¶ 30 Finally, the plaintiffs direct our attention to two items that they insist resolve this case. First, they rely on an affidavit executed by Attorney Goldstein wherein he states that he has no financial interest in this case. Although the affidavit was mentioned at one of the hearings on this issue, it was not filed with the court until after the notice of appeal. Further, the substance of the affidavit contradicts the terms of the contingent fee agreement between named plaintiff Dr. Burget and Attorney Goldstein, which agreement was attached to the privilege log and upon which the court relied in finding that Attorney Goldstein was involved in this case. That agreement formally retains Attorney Goldstein (and others) to perform legal services in return for a fee not to exceed 40% of any settlement or trial award. In light of this document, the affidavit offered by counsel cannot control resolution of the conflict issue.

¶ 31 The plaintiffs also claim that their Amended Motion for Class Certification, in which they ask that only Dr. Burget be named as class representative, makes any claim of conflict moot. We disagree. First, the plaintiffs filed the amended motion after the court entered its discovery order in this case. They did not seek reconsideration with the trial court based on the amended motion; they simply filed a notice of appeal. Further, the conflict issue is not necessarily rendered null by this change. *See Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir.1999) (conflict of interest not cured by class representative's change in title to class member; counsel must be disqualified). The court's thorough assessment of conflict is warranted under the facts of this case; we rely

"upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik, supra,* at 459.

¶ 32 Order reversed and matter remanded for proceedings consistent with this opinion. Jurisdiction relinquished.