J-A25010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OTIS ADAM THOMAS III | |
| Appellant | No. 1092 MDA 2017 |

Appeal from the Judgment of Sentence imposed May 17, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0005913-2015

BEFORE:  STABILE, J., MCLAUGHLIN, J. and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 06, 2021**

Appellant, Otis Adam Thomas III, appeals from his judgment of sentence of 48-96 months' imprisonment for unlawful contact with a minor, indecent assault of a child, and corruption of minors.[1]  The record indicates that the minor complainant, K.E., reported Appellant's acts to a therapist at Cornerstone Counseling, PC ("Cornerstone") in Harrisburg.  The record further suggests, however, that K.E.'s grandmother had communications with Cornerstone as well.  The trial court denied Appellant's request for all Cornerstone records, including communications with K.E.'s grandmother and all records relating to K.E.'s diagnoses, observations and treatment plans.  In this appeal, Appellant argues that the trial court erred by denying his request for records that fell outside the scope of Pennsylvania's psychiatrist-patient

---

[1] 18 Pa.C.S.A. §§ 6318, 3126, and 6301, respectively.

privilege, 42 Pa.C.S.A. § 5944, and the sexual assault counselor privilege, 42 Pa.C.S.A. § 5945.1. We retain jurisdiction and remand for further proceedings, including *in camera* review of Cornerstone's records relating to K.E.'s grandmother's communications and to K.E.'s diagnoses, opinions, evaluations, observations, and treatment plans.

On November 22, 2015, Appellant was charged with committing sexual offenses against K.E. Prior to trial, Appellant filed a petition seeking Cornerstone's records relating to K.E.'s grandmother's communications with Cornerstone and all diagnoses, opinions, evaluations, observations, and treatment plans relating to K.E. In response, the Commonwealth asserted that Cornerstone's records were privileged under the psychiatrist-patient privilege under Section 5944 and the sexual assault counselor privilege under Section 5945.1. In an order dated September 29, 2016, the trial court denied Appellant's petition.

On February 13, 2017, following a three-day trial, the jury found Appellant guilty of the above-mentioned offenses and not guilty of indecent exposure, attempted rape, involuntary deviate sexual intercourse, and aggravated indecent assault. The trial court subsequently imposed sentence, and Appellant filed timely post-sentence motions, which the court denied in an order docketed on June 7, 2017.

Appellant filed a timely notice of appeal. On July 14, 2017, the trial court ordered Appellant to file a Pa.R.A.P. 1925 statement within 21 days, but Appellant did not file a Rule 1925 statement until October 11, 2017. On

October 16, 2017, Appellant's attorney filed a petition for leave to submit a Rule 1925 statement *nunc pro tunc*. Counsel stated that he had drafted a Rule 1925 statement but admitted that his staff failed to file it. On October 17, 2017, without ruling on Appellant's petition, the trial court issued a Rule 1925(a) opinion recommending dismissal of Appellant's appeal for lack of a timely Rule 1925(b) statement. The trial court did not address the merits of any issue in Appellant's Rule 1925(b) statement.

By memorandum of September 18, 2018, we remanded with instructions for the trial court to accept Appellant's Rule 1925(b) statement *nunc pro tunc* and to file a Rule 1925(a) opinion addressing the issues in Appellant's statement. On December 19, 2018, the trial court filed its opinion.

The trial court summarized the evidence as follows:

At the time of trial, K.E.[] was 14 years old and lived with her grandparents. Before moving to her grandparent[s'] home, K.E. lived with her mother, [Appellant] and her younger brother. K.E. testified that she spent most of her time in her bedroom to avoid her mother and [Appellant], her stepfather, yelling at her. She testified that family members in the household rarely spoke to each other.

K.E. recalled that the sexual contact by [Appellant] began when she was ten years old. She recalled being perplexed upon awakening one morning to find that all of her clothes had been removed. Following that incident, [Appellant] began grabbing or smacking her behind or touching her breast on top of her clothes when she passed him in the hallway of the home. [Appellant]'s sexual contact with K.E. would occur in the family room, where he would summon her by text and tell her to sit on his lap. [Appellant] removed K.E.'s clothes, touched her breasts and buttocks, and digitally penetrated her vagina. K.E. testified that [Appellant] touched her breast and vagina with his mouth. K.E. testified that [Appellant] touched her vagina with his mouth on

- 3 -

more than one occasion, sometimes in her bedroom and sometimes in her parents' bedroom. The contact occurred daily or every other day, typically when her mother was either sleeping, in the shower or outside the home. K.E. recalled an incident which occurred while her mother was in the shower when [Appellant] had K.E. sit on his lap on her bunkbed, with his boxer shorts pulled down. K.E. lifted herself up, by hanging onto the wood rail of the bed, to attempt to avoid contact with [Appellant]'s penis. [Appellant] left the room when K.E.'s mother got out of the shower.

K.E. testified that she did not tell anyone of the abuse because she did not think anyone would believe her and because she viewed [Appellant] as a father figure from whom she wanted love. Although [Appellant] required K.E. to stay in her room most of the time, he increasingly allowed her out of her room to take her shopping, out to eat or on his boat. [Appellant] occasionally told K.E. that he loved her.

K.E.'s mother, Laura Thomas[,] testified that in 2009, following the birth of K.E.'s brother, problems arose in the marriage. Ms. Thomas testified that she suffered postpartum depression and had difficulty caring for the children. Ms. Thomas testified that [Appellant] was rarely home to help. In 2014, Ms. Thomas learned that [Appellant] was having an affair.

In late September 2015, K.E. disclosed the abuse to a staff member at her school. Ms. Thomas received contact by either the police or Children and Youth Services. On September 29, 2015, the Lower Paxton Township Police Department received a report of child abuse and sexual assault of a victim, K.E. Police obtained authorization to conduct a one-party consent electronic intercept. With the consent of her grandmother, with whom she was living, K.E. agreed to participate. In a series of text messages, K.E. texted [Appellant] at the direction of detectives. K.E. asked [Appellant] to explain why he [had] touched her that way, to which [Appellant] responded, "I should not have done anything that made you uncomfortable. There's no explanation for it. I understand that it is hard to ask feeling this way (*sic*). I should not have done anything to make this happen. You did nothing wrong!" In another message, [Appellant] stated, "I am sorry that this happened. Cannot express that enough." [Appellant] also stated, "You're fine. Nothing will happen again. You have my word" and "I do love you and want to make this better for you.

- 4 -

There is no explanation I can give, so I need to know how to make this better for you." The intercept concluded at 11:30 p.m. on September 30, 2015. Police arrested [Appellant] the following evening.

When questioned by police, although [Appellant] initially expressed shock at the allegations, he proceeded to make admissions. [Appellant] admitted that he touched K.E.'s breasts and buttocks on top of her clothing and that when he walked into K.E.'s room and saw her in her underwear, "it made his mind wander." [Appellant] admitted that while Ms. Thomas was in the shower, he touched K.E.'s bare breasts and vagina. He admitted to putting his mouth on K.E.'s breast and vagina and having her sit on his lap. [Appellant] told police that the touching occurred in K.E.'s bedroom or the living room while Ms. Thomas was in the shower. [Appellant] stated that K.E. was 11 years old at the time. At one point during the interview, [Appellant] told police that he felt like he was going to be sick, that he was sorry for what he had done, and thought many times about "putting a gun in [his] mouth."

Following his arrest, [Appellant] texted Ms. Thomas to ask her to post bail for him and if they could reconcile. In those text messages, [Appellant] did not state that the abuse of which he was accused did not occur. In one text to Ms. Thomas, [Appellant] stated, referring to K.E., "she doesn't want to hurt a fly, but she wanted to get this off her shoulders."

[Appellant] testified that the admissions made to police were taken out of context and that he made them because he feared ramifications if he did not agree with them.

Trial Court Opinion, 12/19/18, at 3-6.

Appellant raises the following issues on appeal:

A. Did the trial court err by denying the defense request for an *in camera* review and the disclosure of relevant diagnoses, opinions, evaluations, observations, and treatment plans that were not confidential communications protected from disclosure by 42 Pa.C.S.A. § 5944[?]

B. Did the trial court err in denying [A]ppellant's motion for a new trial when the jury's verdict was against the weight of the evidence

because the Commonwealth failed to meet its burden to sustain the alleged charges?

C. Did the trial court abuse its discretion when it imposed consecutive sentences where [A]ppellant's conduct was limited to a single incident and not so egregious as to warrant a four to eight (4-8) year sentence?

D. Did the trial court err in denying [A]ppellant's request to submit a concise statement of matters *nunc pro tunc*?

Appellant's Brief at 9.

In his first argument, Appellant contends that the trial court erred by denying his request for disclosure of records held by Cornerstone Counseling concerning Cornerstone's communications with K.E.'s grandmother and its diagnoses, opinions, evaluations, observations, and treatment plans relating to K.E. The Commonwealth counters that Cornerstone's records are privileged under the psychiatrist-patient privilege in Section 5944 and the privilege governing communications with sexual assault counselors in Section 5945.1.

Prior to trial, counsel for Appellant filed a petition seeking disclosure of therapy and counseling records. Counsel asserted:

It has been brought to [Appellant's] attention that the initial disclosure of the alleged acts was made to a counselor during a therapy session on September 28, 2015 at Cornerstone Counseling, PC, 6011 Jonestown Road, Harrisburg, PA 17112 [Cornerstone]. The defense has a good faith basis to believe that statements made to the therapist in that session and the records contain prior statements of the complaining witness regarding the alleged act. These statements are believed by the defense to contain information related to the complaining witness['s] motive [to] fabricate the allegations and evidence of coaching by her mother and grandmother. Further, the defense has recently learned that the grandmother spent 4-5 hours with the counselor

prior to the session on 28 September when the accusation was made.

Petition, ¶ 3. Appellant requested that the trial court review all information in Cornerstone's records *in camera* and disclose all non-privileged information. Subsequently, Appellant filed a supporting memorandum of law in which he requested records of K.E.'s grandmother's meeting with the counselor and records containing diagnoses, opinions, evaluations, observations, and treatment plans.

In response, the Commonwealth filed a memorandum alleging the following:

> On September 29, 2015, Lower Paxton Police received a referral from Dauphin County Children and Youth regarding an abuse allegation made by a victim K.E., thirteen years of age. The following day, both the CYS caseworker and Detective Autumn Lupey met with the subject child and her grandmother. Her grandmother, Roberta Ebersole, indicated that when the child was at a counseling session on September 28, 2015, she disclosed to her therapist that she was being molested by her stepfather, [Appellant]. The therapist indicated that she would be notifying Children and Youth Services. In the meantime, pending the investigation, the counselor advised that the child should not have contact with the alleged perpetrator.
>
> The child was interviewed by Det[ective] Lupey on September 30, 2015. At that time, she described various incidents of sexual abuse by [Appellant]. As a result of those disclosures, the police discussed the prospect of doing a recorded intercept with the child. She agreed and consent was also given by her grandmother. During the intercepted text messages with [Appellant], he made admissions concerning the abuse. Police then interviewed [Appellant] and he gave a confession to touching the child on her breasts and vagina (with his mouth) when she was eleven years old. After being interviewed and admitting to the conduct, [Appellant] was arrested for Rape of a Child and related offenses.

Commonwealth's Memorandum Of Law To Prevent Release of Cornerstone Counseling Records, at 1-2. Based on these allegations, the Commonwealth contended that all information was privileged under Sections 5944 and 5945.1.

The trial court concluded that Appellant had no right to any documents or *in camera* review. The court stated:

Because the absolute privilege against disclosure applies to the records of statements of K.E. during counseling, we properly denied *in camera* review by the [c]ourt or counsel. Even an *in camera* review of the records of a child sexual abuse victim's treatment with a licensed psychotherapist would violate the absolute privilege against disclosure . . .

We denied [Appellant's] Petition based upon the request articulated therein, records of *statements made by the victim to the therapist.* [Appellant]'s unsupported averment that the defense learned of K.E.'s grandmother['s] communication with the counselor in advance of K.E.'s treatment session fails to state a basis upon which we may subject *K.E.'s statements* to disclosure. The bald allegation, lacking in supporting facts, failed to warrant an evidentiary hearing. Rather, it placed the [c]ourt in the position of having to decipher on what basis an exception to the privilege might exist. We properly declined to do so.

[Appellant] sought to further expand the records request in his Memorandum in Support of [his Petition] with legal discussion related to the discoverability of the diagnoses, opinions, evaluations and treatment plans of the therapist. [Appellant]'s Memorandum failed to properly place such request before the [c]ourt by way of petition and proffer of evidence. We therefore limited our review to the request as presented by [the] Petition and declined to expose privileged records to perusal based upon argument in a memorandum.

Trial Court Opinion, 12/19/18, at 11-12 (emphasis in original).

"Pennsylvania law does not favor evidentiary privileges." *In re Subpoena No. 22*, 709 A.2d 385, 388 (Pa. Super. 1998). "Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Commonwealth v. Stewart*, 690 A.2d 195, 197 (Pa. 1997).

A sexual offense defendant's entitlement to an alleged victim's records held by an agency, hospital, rape crisis center or other third party depends upon the scope of any privilege that may protect the confidentiality of the victim's records. *Commonwealth v. Eck*, 605 A.2d 1248, 1251 (Pa. Super. 1992). In the case of statutory privileges such as Sections 5944 and 5945.1, the scope of the privilege rests upon the language of the statute. *Id.* at 1252. "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that appellate courts are faced with questions of law, [our] scope of review is plenary." *Gormley v. Edgar*, 995 A.2d 1197, 1202 (Pa. Super. 2010).

The party asserting privilege against discovery of requested materials bears the burden of proof of demonstrating that the materials are protected from disclosure. *Fisher v. Erie Insurance Exchange*, —A.3d—, 2021 WL 2622486, *6 (Pa. Super., Jun. 25, 2021) (*en banc*). The party invoking a

privilege must initially set forth facts showing that the privilege has been properly invoked. *Id.* Once the invoking party has made the appropriate proffer, the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies. *Id.* If the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, the burden never shifts to the other party, and the material is not privileged. *Id.*

In *Fisher*, following detailed review of applicable precedents, this Court defined the circumstances in which the court should review alleged privileged materials *in camera*. *Fisher* held that

> when a request has been made that on its face seeks protected materials, and the responding party clearly sets forth facts that leave no doubt as to the applicability of any privilege, *in camera* review is not permitted and doing so would violate privilege. *Farrell [v. Regola*, 150 A.3d 87 (Pa. Super. 2016)]. Where, however, the request made and the assertion of privilege by the responding party and/or the proofs offered by the requesting party render a court unable to determine an issue of privilege, an *in camera* examination is appropriate and fully supported by our case law. *Gocial [v. Independence Blue Cross*, 827 A.2d 1216 (Pa. Super. 2003)]; *Ignelzi [v. Ogg, Cordes, Murphy and Ignelzi, LLP*, 160 A.3d 805 (Pa. Super. 2017)]; *T.M. [v. Elwyn*, 950 A.2d 1050 (Pa. Super. 2008)]. This approach strikes an appropriate balance between preserving privilege and protecting a party's right to discoverable material.

*Id.* at *10. We also stated:

> Where a record is clear that privilege properly has been invoked and any evidence of a requesting party has not refuted this showing, *in camera* review, which would invade privilege, is inappropriate . . . Where, however, privilege has been asserted

- 10 -

but facts have been presented that an exception to privilege may apply, a court in its discretion may order *in camera* review of the disputed materials.

*Id.* at *11.

With this procedural framework in place, we examine whether K.E.'s grandmother's communications with Cornerstone are privileged under Sections 5944 and 5945.1. Section 5944 provides:

> No psychiatrist or person who has been licensed under the Act of March 23, 1972 (P.L. 136, No. 52) to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services on behalf of such client. The confidential relationship and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944. The purpose of this privilege is to "protect confidential communications made and information given by the client to the psychotherapist in the course of treatment." *Farrell*, 150 A.3d at 97-98; *see also Gormley*, 995 A.2d at 1204 (privilege "aid[s] in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure").

The psychotherapist-patient privilege applies only to "information acquired in the course of [the psychiatrist's or psychologist's] professional services on behalf of [the] client." 42 Pa.C.S.A. § 5944; *see also T.J.W.*, 114 A.3d at 1105. The privilege applies not only to communications with the therapist but also to communications with other individuals on the patient's treatment team who are not themselves psychotherapists. *Commonwealth*

*v. Cook*, 231 A.3d 913, 922 (Pa. Super. 2020). Furthermore, under Section 5944's second sentence, any exceptions that apply to the attorney-client privilege also apply to the psychiatrist/psychologist-patient privilege. For example, any communications between the patient and the therapist are not privileged if they are made in the presence of third persons who are not part of the patient's treatment team. *Cf. Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. 1995) (for attorney-client privilege to apply, communication must relate to facts of which attorney was informed by his client, without presence of strangers, for purpose of securing either an opinion of law, legal services, or assistance in a legal matter).

Applying *Fisher's* framework, *id.*, 2021 WL at 2622486, *10-11, we conclude that *in camera* review of Cornerstone's records is necessary to determine whether Section 5944 applies to K.E.'s grandmother's communications. Counsel alleged that K.E.'s grandmother met with a Cornerstone representative at a specific time (in advance of K.E.'s September 28, 2015 session) and for a specific length of time (four to five hours). Counsel made this allegation in "good faith." Petition, ¶ 3. Counsel's allegations raise two questions under Section 5944: (1) whether communications to Cornerstone from non-patients such as K.E.'s grandmother constitute "information" acquired "in the course of" Cornerstone's "professional relationship on behalf of" K.E, and (2) whether Cornerstone's "professional relationship" began "on behalf of" K.E. when Cornerstone

conferred with a non-patient, K.E.'s grandmother, or when Cornerstone subsequently conferred with K.E. herself. *Id.* To resolve these questions, the trial court on remand should (1) examine Cornerstone's records of K.E.'s grandmother's communications *in camera* to learn what, if anything, K.E.'s grandmother said and (2) determine whether these communications fall within the boundaries of Section 5944. In addition, the court may, in its discretion, hold an evidentiary hearing to receive non-privileged evidence on any element within Section 5944 (for example, whether the Cornerstone employee who met with K.E.'s grandmother was a psychiatrist, licensed psychologist or was on K.E.'s treatment team).

Although the trial court characterized counsel's request as a "bald allegation, lacking in supporting facts," Trial Ct. Op. at 12, we think counsel's good faith assertion that K.E.'s grandmother met with Cornerstone for four to five hours in advance of K.E.'s meeting is sufficiently detailed to warrant *in camera* review of Cornerstone's documentation of this event.

We also observe that the present case is distinguishable from **Farrell**, in which this Court held, *inter alia*, that mental health treatment records of one of the defendants were not subject to *in camera* review. In **Farrell**, a wrongful death and survival action, the plaintiff sought documents authored by a licensed psychologist and a licensed clinical social worker during treatment sessions with one of the defendants. The defendant produced privilege logs setting forth the dates and nature of these documents. The trial

court held that it intended to disseminate any communication by the defendant concerning the events surrounding the plaintiff's decedent's death. This Court accepted the case for collateral review and reversed, reasoning that the treatment records not only were privileged under Section 5944 but also were not subject to *in camera* review. ***Id.*** at 95 ("[i]f materials are privileged, no one, not even a trial judge, may have access to them").

In **Fisher**, we explained **Farrell's** decision to preclude *in camera* review as follows:

> The fact that the requests made and the privilege logs produced in **Farrell** so clearly invoked privilege, places in context this Court's statement that if materials are privileged, no one, not even a judge, may have access to them. The requests on their face clearly asked for privileged documents. Counsel's response and privilege logs were precise enough to leave no question as to the applicability of privilege. The respective burdens of proof were satisfied to make any *in camera* review unnecessary. In fact, it would have been error for the trial court to conduct an *in camera* review, as there was no need to review documents, and therefore invade privilege, to determine if documents were privileged, given the requests and responses thereto. Discovery requests were made and privilege objections were asserted. Defense counsel met the burden of proof of establishing the privileged nature of the requested documents through the precise detail on the privilege logs. The burden then shifted to requesting counsel to come forth with reasons why privilege should not apply. He did not do so, thus leaving the question of privilege to be determined as a matter of law by the trial court.

***Id.***, 2021 WL 2622486, at *9.

The present case differs from **Farrell** because Appellant did not ask for documents that were privileged on their face (for example, K.E.'s own communications with a Cornerstone therapist). Instead, the documents that

Appellant requested may or may not fall within the privilege, and *in camera* review is the only way to resolve this issue. In addition, unlike in **Farrell**, the Commonwealth did not produce privilege logs that "were precise enough to leave no question as to the applicability of privilege." **Fisher**, 2021 WL 2622486, at *9 (discussing **Farrell**). The Commonwealth merely made a blanket assertion of privilege which did nothing to resolve the privilege issue. Once again, *in camera* review is the only mechanism available to resolve the issue.

Next, we address whether K.E.'s grandmother's communications are privileged under Section 5945.1, the sexual assault counselor privilege, which provides in relevant part:

> (a) Definitions.- As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Confidential communication." All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statistical data, memoranda, working papers, records or the like, given or made during that relationship, including matters transmitted between the victim through the use of an interpreter.
>
> "Rape crisis center." Any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counseling.
>
> "Sexual assault counselor." A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of sexual assault training and is under the control of a direct services supervisor of a rape crisis center, whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.

"Victim." A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault. The term shall also include those persons who have a significant relationship with a victim of sexual assault and who seek advice, counseling or assistance from a sexual assault counselor concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault of a victim.

(b) Privilege.-

(1) No sexual assault counselor may, without consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.

(2) No co-participant who is present during the counseling may disclose a victim's confidential communication made during the counseling session nor consent to be examined in any civil or criminal proceeding without the written consent of the victim.

42 Pa.C.S.A. § 5945.1.

Section 5945.1 prohibits disclosure of any "confidential oral or written communication" transmitted between the "victim of sexual assault" and a "sexual assault counselor" in the course of their relationship, absent the victim's consent. It is an absolute privilege that is not overcome even by the constitutional rights of a criminal defendant. *V.B.T. v. Family Services of Western Pennsylvania*, 705 A.2d 1325, 1329 (Pa. Super. 1998).

A "victim" is the person seeking consultation for a condition caused by, or reasonably caused by, a sexual assault. 42 Pa.C.S.A. § 5945.1(a). Notably, a "victim" also includes "those persons who have a significant relationship with a victim of sexual assault" concerning a condition caused or reasonably

believed to be caused by a sexual assault of a victim. A "sexual assault counselor" is an individual who has undergone the training required under the statute and who is under the control of a direct services supervisor of a rape crisis center. *Id.* A "rape crisis center" is "any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counseling." *Id.*

The trial court denied Appellant's petition for disclosure without conducting *in camera* review of Cornerstone's records. Applying *Fisher*, we conclude, based on the allegation in Appellant's petition of K.E.'s grandmother's four-to-five hour meeting with a Cornerstone counselor, that the trial court should (1) review Cornerstone's records of this meeting *in camera* to determine what, if anything, Grandmother said, and (2) determine whether Grandmother's statements fit within the boundaries of Section 5945.1. In addition, the court may, in its discretion, hold an evidentiary hearing during which the parties may present non-privileged evidence as to any element within Section 5945.1 (for example, whether K.E.'s grandmother has a "significant relationship" with K.E. or whether the person with whom K.E.'s grandmother met at Cornerstone was a "sexual assault counselor").

Following *in camera* review and any other proceedings, the trial court shall enter written findings of fact and conclusions of law concerning whether Appellant is entitled to relief as a result of the pretrial order denying access to

Cornerstone's records relating to K.E.'s grandmother's communications. Two conditions must be satisfied in order for Appellant to obtain relief. First, the records must fall outside **both** privileges, that is, **both** Sections 5944 and 5945.1. If the records fall outside both privileges, the court must examine whether denial of access to these records prejudiced Appellant by applying the harmless error standards articulated in **Commonwealth v. Story**, 383 A.2d 155 (Pa. 1978), and its progeny.[2]

Next, we address Appellant's argument that the court erred by denying his request for Cornerstone's records of diagnoses, opinions, evaluations and treatment plans pertaining to K.E. The psychotherapist-patient privilege in Section 5944 does not apply to opinions, observations, diagnosis, and

---

[2] Under **Story**, an error is prejudicial "only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." **Id.** at 162. Error is harmless only where:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Taylor**, 209 A.3d 444, 450 (Pa. Super. 2019). **Taylor** adds that "harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict. If there is a reasonable probability that an error may have contributed to the verdict, the error is not harmless." **Id.**

treatment alternatives outlined by the professionals who interview the patient. *Farrell*, 150 A.3d at 98. Nor does the sexual assault counselor privilege in Section 5945.1 apply to these records, since Section 5945.1 is limited to confidential communications from a victim to a sexual assault counselor. Accordingly, we order a similar remedy with regard to these records as we did above with regard to records of K.E.'s grandmother's communications. We remand to the trial court for *in camera* review of Cornerstone's records to identify any diagnoses, opinions, evaluations and treatment plans pertaining to K.E. Following *in camera* review, the court should enter written findings of fact and conclusions of law as to whether any such records exist and whether denial of access to these records prejudiced Appellant by once again applying the harmless error standards articulated in *Story*.

Given our decision to remand on the subjects of privilege, we find it premature at this time to address the other issues raised in this appeal. Instead, we retain jurisdiction, and pursuant to this Court's authority under Pa.R.A.P. 1701(b)(5), we direct the trial court to complete the proceedings outlined above, including the entry of all written findings of fact and conclusions of law, as expeditiously as possible. Upon the entry of the trial court's decision, either party to this appeal may file a supplemental or first-time 1925(b) statement within 21 days of the entry of the trial court's decision and in the manner provided under Pa.R.A.P. 1925(b)(1). The trial court should then proceed expeditiously to address the issues raised in those statements,

issue a supplemental Rule 1925(a) opinion, certify a supplemental record, and return the original and supplemental records to this Court. Upon receipt of the trial court's submissions, we will proceed further to consider this appeal and, if necessary, direct the filing of supplemental briefs by the parties. To assist the trial court on remand, we direct the Clerk of this Court to transmit the original and supplemental certified records to the trial court.

Case remanded for further proceedings in accordance with this memorandum. Jurisdiction retained. Appellant's application for relief in the form of a praecipe for final decision on appeal denied as moot. Appellant's motion to seal brief and reproduced record denied.